MAYER GUGGENHEIMER, Respondent, v. CATHARINE E. SEFTON, Appellant.

First Department, November 27, 1925.

Brokers — real estate broker — action for commissions — plaintiff who was not in real estate business was asked by defendant to sell hotel — plaintiff, through friend, interested purchaser who signed contract — plaintiff never saw purchaser — friend of plaintiff wrote that he was not to receive commissions — plaintiff did not show that he produced purchaser — plaintiff is bound by letter written by friend — plaintiff cannot recover.

In an action to recover commissions for the sale of a hotel in which it appears that the plaintiff, who was not engaged in the real estate business, was asked by the defendant, the owner of the hotel, to sell it for her, the evidence does not show that the plaintiff procured the person who actually signed the contract of purchase, since it appears that the plaintiff never met the purchaser; that a friend of the plaintiff, at plaintiff's request, called the attention of the purchaser to the hotel and furnished him with a floor plan which was supplied by the plaintiff; that plaintiff's friend wrote to the purchaser that he was not to receive any commission on the sale and that the contract recited that the purchaser was introduced to the seller by the plaintiff's friend, but did not mention the plaintiff.

The plaintiff was bound by the letter written by his friend, since he alleged in his amended complaint that the friend was acting for him as his agent in the transaction.

MERRELL and McAVOY, JJ., dissent, with opinion.

APPEAL by the defendant, Catharine E. Sefton, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of December, 1924, upon the verdict of a jury, and also from an order entered in said clerk's office on the 26th day of December, 1924, denying defendant's motion for a new trial made upon the minutes.

*H. H. Snedeker* [*A. A. Silberberg* of counsel], for the appellant.

*Kornblueh & Hutter* [*Arthur Hutter* of counsel], for the respondent.

MARTIN, J.:

This is an action to recover commissions for the sale of real property. The complaint alleges that defendant engaged plaintiff to procure a purchaser for premises Nos. 164–166 West Seventy-fourth street at $350,000, and agreed to pay him as commission $4,100; that pursuant to said agreement plaintiff negotiated with various persons and in or about the month of January, 1921, procured one Edward Arlington as a purchaser with whom defend-

ant entered into a written contract for the purchase and sale of said premises for $350,000.

Subsequently there was served an amended complaint alleging plaintiff's employment to sell said premises; that he engaged one Joseph Freiberg to act as his agent in connection with the matter; that in or about the month of January, 1921, the said Joseph Freiberg, acting as agent for and on behalf of the plaintiff, produced as a purchaser Edward Arlington with whom defendant entered into a written contract for the sale of said premises for $342,500, and that pursuant to said employment plaintiff became entitled to commissions in the sum of $4,025.

On the trial plaintiff testified that in the year 1920 he was selling linens to the hotel and restaurant trade and had sold linens to defendant in connection with her operation of the Seventy-fourth street premises; that she stated she would like to dispose of her property and retire from the hotel business, as her health was not good and she was getting too old to manage her hotel, and asked plaintiff to procure a purchaser for her; " that she did not want to have anything to do with the people actually engaged in the real estate business." Nothing in particular was said about compensation, except that plaintiff was to be compensated if he procured a purchaser, and nothing was mentioned as to the amount he was to receive. He says that beginning in March, 1920, he spoke to a number of persons interested in the purchase of hotels about this property, at that time stating the price at $325,000, and that he brought two people to defendant, the first a Mr. Schiff, about six weeks to two months from the time defendant first spoke to plaintiff. The effort to interest Schiff was unsuccessful. Plaintiff testified that in December, 1920, he spoke to Mr. Freiberg, who had just purchased the Hotel Maryland, and Freiberg stated that he would not be interested but would mention the matter to Mr. Arlington from whom he had purchased the Hotel Maryland; that the next day plaintiff saw Freiberg who stated he had spoken to Arlington, that Mr. Arlington was interested and wanted to see a floor plan; that plaintiff obtained a floor plan from defendant and took it to Mr. Freiberg whom he saw again the next day when he was told that Arlington would go up that afternoon to look at the hotel, whereupon plaintiff telephoned defendant to be there to show Arlington through the house; that a day or two later plaintiff saw defendant, who stated that she did not want to sell the house then; and that she said she had sold it to Mr. Arlington but she was not going to let him have it.

Mr. Freiberg testified that he was the proprietor of the Hotel Maryland and knew Arlington, having bought the Hotel Maryland

from him; that he also knew the plaintiff; that he had a conversation with plaintiff about Arlington concerning the purchase of defendant's property, and thus obtained the details and the purchase price; that plaintiff gave him one floor plan of the property which he gave to Arlington; that he reported to plaintiff that Mr. Arlington was going up to look at the property; that he was not interested in making claim at any time for commissions in connection with the services rendered in getting Mr. Arlington interested; and that he did it because he was a friend of plaintiff who asked him to do that for him.

On cross-examination Freiberg admitted his signature to a paper marked "Defendant's Ex. A," a letter to Arlington stating that, in the event Arlington should purchase defendant's premises, "there is no commission to be paid to me."

At the close of plaintiff's case defendant moved to dismiss the complaint and this motion was renewed at the end of the case.

Plaintiff has failed to show that he procured a purchaser for defendant's property.

Plaintiff never met Arlington. The basis of his claim is that he mentioned the property to Freiberg who in turn mentioned it to Arlington. It does not appear that Freiberg ever met defendant or took part in any way in the negotiations leading up to the contract. The contract of sale between defendant and Arlington recites that "purchaser certifies that he was introduced to the seller by Joseph Freiberg and knows of no broker in this matter."

Plaintiff asserts that Freiberg was acting for him. Freiberg wrote the letter to Arlington to the effect that, in the event Arlington should purchase the premises, no commission was to be paid to him. Plaintiff contends that this letter is not binding upon him, and that it is to be limited in its application to a claim by Freiberg to the commissions sought to be recovered in this action. There is no merit in this contention. Freiberg was an agent of plaintiff and the letter is binding on him.

It does not appear that plaintiff made any claim for commissions between January, 1921, when the contract was signed, and November, 1921, when the action was brought. The difference between the claim made in the complaint and that made in the amended complaint, as well as plaintiff's testimony that he did not meet Mr. Arlington or take part in the negotiations, showed that he was not the procuring cause of the contract.

The judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., and DOWLING, J., concur; MERRELL and McAVOY, JJ., dissent.

MERRELL, J. (dissenting):

The action is to recover commissions which the plaintiff claims were his due for obtaining for the defendant at her request a purchaser of her hotel property situated on West Seventy-fourth street near Amsterdam avenue, in the borough of Manhattan, New York city. The hotel property was known as "Marbury Hall." The plaintiff testified that his business was real estate, and that in March, 1920, he had a conversation with the defendant at Marbury Hall, which was a hotel then run by her, in which the defendant told him that she wanted to get out of the hotel business on account of her health, and that she was too old to manage the hotel longer, and that she asked plaintiff to obtain a purchaser of the hotel for her; that she did not want to deal with any real estate agent, and that if the plaintiff procured a purchaser for her he would be compensated. At that time the plaintiff had been acquainted with the defendant a year or two and had seen her often and been in her hotel selling linens, he having been engaged at that time in selling linens to the hotel and restaurant trade. The plaintiff further testified that upon his inquiring as to her price she first stated that she would take $325,000; that he saw the defendant thereafter every ten days or so, and that on each occasion she asked him to get a purchaser for the hotel; that six weeks or two months later he brought to the defendant a man by the name of Schiff who negotiated with the defendant for the purchase of the hotel, but that nothing came of it; that six months later the plaintiff spoke to one Joseph Freiberg, who was then the owner and proprietor of the Hotel Maryland, and proposed to Freiberg that he purchase the hotel; that Freiberg told him that he was not able to do it at that time owing to his having purchased the Hotel Maryland; that Freiberg then told him that a Mr. Arlington, from whom he had purchased the Hotel Maryland, might be interested in the property; that he told the defendant of his efforts to sell to Freiberg in December, 1920, and had spoken to her sometime prior with relation thereto; that on an occasion about this time the defendant sent for him to come to her sick room and then begged of him to get a purchaser for the hotel, as she was too sick to carry it on longer; that he asked Freiberg, in response to his suggestion that perhaps Mr. Arlington would take the hotel, to see Arlington, and that Freiberg promised to do so; and that on the next day the plaintiff again called on Freiberg and the latter told him that Arlington was interested in the matter and would like to see a floor plan of the property. Freiberg asked the plaintiff to procure for him a floor plan and plaintiff procured such plan from the defendant, telling

her that it was for Freiberg or the man from whom Freiberg had bought the Hotel Maryland; that the day following the delivery of the floor plan the plaintiff again called on Freiberg and was told that Arlington was interested and was going to see the property that afternoon; that he then called the defendant on the telephone and talked with her telling her to be sure to be at home so that she could show Arlington the property; and that the defendant replied that she would be there. Plaintiff further testified that within a day or two thereafter he learned that Arlington had bought Marbury Hall of the defendant. He called upon the defendant and asked her for particulars and she denied to him that she had sold to Arlington, saying that she would not sell to him as he was a race track man and an ex-circus man; that he then told her that she had already entered into a sale of it to Arlington, which she did not deny, but stated she would not fulfill the contract, and refused to discuss the matter further with the plaintiff. The contract of sale was introduced in evidence between the defendant and Arlington, and it appears therefrom and from the admission of the defendant upon the trial, that the purchase price was $342,500. Plaintiff gave testimony of real estate agents that the usual fee for the sale of such property, as commissions to the broker, is two and one-half per cent on the first $40,000 and one per cent on the balance. The purchase price being $342,500, the commission, therefore, claimed by the plaintiff was $4,025.

The defendant denied upon the witness stand that she ever told the plaintiff that she wanted to sell the property. She testified that he spoke to her one day and advised her to sell it, but that she said she would not; that she would not know what to do if she sold her hotel. The defendant denied practically all of the testimony of the plaintiff. She, however, admitted on cross-examination that the plaintiff had brought the man Schiff to her, and that she had negotiated with Schiff for the sale of the hotel, and that she had asked Schiff $350,000 for it. Defendant testified that Arlington was brought to her by a man by the name of Kelly, who had been a waiter in her hotel restaurant some years before. She testified that she never heard of Freiberg, and that the waiter Kelly was the one who brought Arlington to her. The defendant's testimony, however, was flatly contradicted by an indorsement on the contract, which was signed by Arlington, in the following words: " The purchaser certifies that he was introduced to the seller by Joseph Freiberg." The defendant did not bear a very good cross-examination. In the answer of the defendant which she had verified, she denied the making of the contract with Arlington, a copy of which

was annexed to the complaint, but finally was forced to admit that the contract had been executed.

The questions of fact presented by the testimony were submitted to the jury in a fair charge by the justice presiding at the trial.

Several errors are assigned by the appellant upon which a reversal is asked. It is claimed, *first,* by the appellant that the plaintiff did not prove by a preponderance of evidence that he brought the minds of the buyer and seller to an agreement for a sale, and the price and terms on which the sale was to be made. If plaintiff is to be believed it was through his efforts and those of his agent, Freiberg, that Arlington was brought to the defendant, with whom he negotiated and finally entered into the contract for the purchase of the property. A large number of cases are cited by the appellant to the effect that a broker claiming commissions must show that he brought the parties together and that a sale was procured upon the terms and conditions required by the seller. I think enough appeared in this case to justify the jury in finding that the plaintiff did bring these parties together, and the fact that the contract was afterwards entered into shows that their minds met upon the terms of the sale. A large number of cases are cited by the appellant, but it seems to me none of them are in point, and that those cases, for the most part, are where there has not been an actual sale of the property.

It is also claimed by the appellant that there was no agreement to pay the plaintiff commissions. It is true the term "commissions" was not mentioned, but the plaintiff testified the defendant told him that if he could obtain a purchaser for the property he would be compensated for his trouble. No amount of compensation was agreed upon, and, therefore, the plaintiff was entitled to receive the fair and usual price paid for services of the character that he rendered.

It is also claimed that the plaintiff was discharged by the defendant long before producing a purchaser of the property. Some testimony was given by the defendant that she had taken the matter out of the plaintiff's hands, which testimony was not categorically denied by the plaintiff. However, the plaintiff testified that but a few days before he obtained the purchaser who finally took the property, the defendant had sent for him and on her sick bed implored him to get a customer for the property.

It is also claimed that the jury was misled and prejudiced against the defendant by an unwarranted cross-examination concerning her denials in her answer. I think this cross-examination under the circumstances was entirely proper, and that the defendant was

well able to take care of herself, and finally hid under the plea that her counsel would have to give the reason why she had denied in her answer the making of the contract.

It is also claimed that the plaintiff is precluded from recovering commissions by reason of the written statement made by Freiberg and delivered to Arlington at the time he asked Arlington to visit the defendant and look over the property. The instrument in question was signed by Freiberg and addressed to Arlington, as follows:

" Dear Mr. Arlington:

" In the event that you should purchase the Marbury Hall there is no commission to be paid to me.

" Yours,
" J. FREIBERG."

Freiberg for himself was not asking any commission, and never asked any commission. He testified in behalf of the plaintiff that he called upon Arlington and interested him in the proposition and sent him to look over the defendant's property, and that he did this as a matter of kindness to the plaintiff without ever expecting, himself, to receive any compensation; that the plaintiff was his friend. In any event, I do not think Freiberg could bind the plaintiff if it can be said that his statement that there was no commission due him applied to the plaintiff.

It is also claimed that the court erred in refusing to grant certain requests to charge made by the defendant. These requests were in writing and handed up to the trial court. They were some twenty-three in number. The court announced that he had numbered the defendant's requests and would turn them over to the stenographer; that certain ones he would charge, and those that he refused to charge he would give counsel for the defendant an exception to such refusal to charge in each instance. Thereupon the court read the numbers of the requests and passed upon each. Most of the requests the court granted. The appellant calls particular attention to the fifteenth request to charge, which the court refused, and states that the request was drawn verbatim from the decision in *Sibbald* v. *Bethlehem Iron Co.* (83 N. Y. 378), and that refusal to charge as requested was error. This particular request was as follows: That the court charge the jury that " the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and, until that is done, his right to commissions does not accrue." Undoubtedly the law as stated by the request was good, and except for the fact that the court had covered the

request in his main charge, might present reversible error. In his main charge the court charged the jury as follows: " The first question you have to consider is whether the plaintiff was employed by the defendant as a broker to sell the property in question." The court further stated: " If you find, however, that the defendant did engage this plaintiff to procure a purchaser for the property in question and that she had notice that Freiberg was acting for the plaintiff, or had notice of facts from which a person would reasonably conclude that Freiberg was acting for the plaintiff, and that plaintiff either himself or through his agent made the sale directly or as its efficient and procuring cause, then your verdict should be for the plaintiff." I do not think the charge as requested by the defendant's counsel was applicable to the proofs in the case at bar, while as a legal proposition it correctly stated the rule. I think such rule as was embodied in the request applied only to cases where no written contract was entered into between the parties. Assuming its applicability, I think the court properly refused to charge the same in view of his main charge. Aside from the quotation from the charge above made, the court further charged the jury: " That even if the plaintiff was employed to make sale of the premises, if he was not the procuring cause of the sale the judgment must be for the defendant." This charge was in response to the fifth request to charge made by counsel for the defendant. The sixth request to charge was: " That procuring cause means that the broker or his agent has brought the purchaser and seller together, and through his efforts has caused the agreement of sale to be executed, and that if he has not done this, the judgment must be for the defendant." The court charged the jury as thus requested. The twenty-first request to charge made by counsel for the defendant was as follows: " Where a broker employed to sell land merely called the attention of a prospective purchaser to the property without notifying his principal and without taking further steps in the matter, he is not entitled to commissions if the owner sells the land to the customer without knowledge of the broker's negotiations." To such request the court acceded and charged the jury as requested. The twenty-second request to charge made by counsel for the defendant was as follows: " It matters not that the plaintiff may have started negotiations which resulted in a sale, if he was not the procuring cause of the sale." In response to such request the court charged the jury as requested. These requests surely cover all the matters contained in the fifteenth request to charge, for refusal of which the appellant seeks reversal.

I think the record presents only a straight question of fact, and

that the jury was justified in rendering a verdict in the plaintiff's favor, which they did, for the amount proven to be the usual commissions in such cases, together with interest.

The judgment and order appealed from should be affirmed, with costs.

McAVOY, J., concurs.

Judgment and order reversed, with costs, and the complaint dismissed, with costs.